The argument next in Moncayo v. United Parcel Service at L23161. Thank you. Thank you. Good morning, your honors. Brian Isaac, I represent the appellant. Fortunately or unfortunately, my argument is much, much more structured and much, much more narrow. And it's fairly simple. My position is that four, or if you'd want three and a half, evident... I'm so sorry, I'm having a hard time hearing you. Oh, I'm sorry, your honor. Can you get a little closer to me? Thank you so much. My position, can you hear me now? Yes. My position is that four evidentiary rulings by the trial court, cumulatively under the facts of this case, deprive plaintiff of a fair trial. We don't have a lot of disputed facts here. There's no question that the plaintiff was taking a westbound bus on 125th Street in the Bronx and St. Nicholas Avenue, got off at the bus stop, crossed diagonally, right, northwest to southeast, and got hit by the front of the bus. And even though each of these errors may not have been significant in terms of their individual effect, the cumulative effect was very significant because we know from the video, both the video that was shown to the jury and the excluded video, that this was not a side collision, it was a front collision. So what's my argument? My argument with respect to Dr. Pugh, Dr. Pugh did an analysis of what he saw. He did a site inspection. He did an intersection inspection. If you take what he did and you compare it with what the defendants expert, Mr. Curzel did, I submit to the court that Dr. Pugh's investigation was far more thorough than that of Mr. Curzel. And let me tell you what Mr. Curzel said. I'm sorry, can I just take a step back? Can you explain to me why that would meet the abuse of discretion standard? I mean, we could agree with you or not agree with you, but why is the exclusion violent? Sure, so even though we're dealing with a non-crosswalk accident, as you know from reading our briefs, New York law has always been that not crossing in the crosswalk isn't negligence per se. Plaintiff's theory of liability was a very simple one. It doesn't matter what the plaintiff did. What the plaintiff did could have been comparative negligence. The failure to see that which should be seen by the proper use of one's senses is never exculpatory. It is always inculpatory. Court of Appeals said so in Wigand against United Traction Co. There's a statute on it, VTL 1146, and you're dealing with a front impact collision. This, we thought, as you know, was a two to one case. We knew that the driver, Mr. Mischel, was going to say, I didn't see the plaintiff. He's also going to say, I don't know why I didn't see the plaintiff. And we knew that the plaintiff, that the defendant, and his expert, Mr. Curzel, were going to say that there were blind spots in all vehicles, although they didn't really identify the blind spot here. Mr. Pugh, or Dr. Pugh, whatever you want to call him, did a site inspection and also actually did a visual inspection of the vehicle at the UPS plant. Dr. Pugh would say, and you read his report, that there was visibility both to the left, to the right, and in the front. So- I'm sorry, Peter, if you could just, why was the district's court's determination that they were not, that this opinion was not supported by data or facts and abuse of discretion? Not do you disagree, not maybe, could somebody else find another way to do it? Would somebody else have let it get in front of the jury? Why was it an abuse of discretion? It was an abuse of discretion because even if you wanted to limit Dr. Pugh to his report, I believe an expert can always testify as to that expert's observations, provided that the expert gives a proper disclosure, which Dr. Pugh did. Rule 703 of the Federal Rules of Evidence specifically says that an expert's observations are sufficient to support an underlying position. Now, if the trial court, Your Honor, to your point, had said, look, I'm not going to preclude Dr. Pugh. But what I'm going to do is I'm going to hold him to the contents of his report, I'm not here. But he shouldn't have been precluded from testifying as to a visual observation, especially given what Mr. Kurzel, the defendant's expert, said. And I want to go over that with you, if I can, within my time limit. Mr. Kurzel on page 562 to 563 said, to the best of my recollection, that he visited the site the day before the accident, and he said it wasn't really necessary because they had a video and this wasn't at night. He said on 587 that his expertise was predicated on, quote, personal experience from sitting, quote, in numerous tractor trailer buses. That's a 587 in the record. On 613 of the record, Mr. Kurzel said, quote, he never inspected the bus, claiming it wasn't necessary. And while he did say that all vehicles have blind spots, if you check at 578, if you check at 586 to 587 of the record, he also said he wasn't testifying as to these blind spots specifically. Perhaps most importantly for my argument, given what the trial court found, if you look at 619 of the record, when he was talked about, when he spoke about the defendant's placement in the vehicle, he said, I don't know it, and it has no impact on my opinion at all. So if you match side by side what Dr. Pugh said, and what Mr. Kurzel said, or Dr. Kurzel said, Dr. Pugh's analytics are more extensive, and I think are more probative on what they could actually see. That's why it's not an abuse of discretion, I just think the district court got this one wrong. I'm going to try not to go over my time, just let me deal with the other two issues. There is no question that the district court judges have the right to determine how summations are going to be done. It's a local rule, we're not disputing it. And this might not have been an issue, but for the fact that when you look at what the defendant said, when the plaintiff had no right of rebuttal, he said this is on 642 to 643. That expert just doesn't exist because of the reasonableness of Makiah's actions, comma, actions just don't exist at 642 to 643. It might- Was there any objection at the time that that statement was made in summation? There was an objection, it wasn't an objection specifically to that. He objected, Mr. Steinberg objected, and I believe what he said was this is an issue for the jury. But the fact of the matter is that just wasn't true. You can always talk about the absence of evidence, but as we showed you in the New York cases, you can't say that someone's entitled to an adverse inference charge or that there should be an adverse inference when there's been a preclusion order. You don't get two bites at the apple. If you win, you win, but you don't get to kind of enhance it. And our final position, I say I only have 24 seconds left, is I would just ask you to look at the photographs that Dr. Pugh took. I think they do show visibility. And I would ask you to look at the first video that was allowed into evidence, it goes over to 106. Look specifically at 104 to 110 of the non-excluded video. The excluded video shows the plaintiff taking what I can see is two to three steps. It's not a great video, and it's hard to stop. But it shows him walking closer to what would be lane five in a situation where, and this is a very important point, and I'll sit down, I'll let Mr. Weinberg talk to you. The defendant himself, Mr. Cusel, said, even though he said there was a blind spot, this is at 622. He said, quote, you may see the top of his head there, I would agree with that. So it wasn't a completely blind incident, it was a situation where he was visible. And seeing him walking across, and then the defendant not even stopping, I think was probative on the issue of negligence. Thanks for listening to me. Good morning, your honors. May it please the court, Seth Weinberg for the defendant's appellants, and I'll take the points in the order that Mr. Isaac did. With regard to Dr. Pugh, it was not an abuse of discretion to preclude his testimony. And in fact, it was a correct ruling to preclude his testimony. Under Rule 702, the expert has to rely on sufficient data to come to an opinion. And what's interesting is, if the court looks at Dr. Pugh's report, it annexes all of these studies that require the use of these mathematical calculations to determine visibility by a driver. Dr. Pugh's report doesn't indicate he engaged in any of those calculations or took any of those measurements. And my colleague spends a great deal of time comparing Dr. Pugh's testimony, reported testimony, to Mr. Cusel's and claims, well, because Mr. Cusel was able to testify, and Mr. Isaac's opinion had less foundation than Dr. Pugh, Dr. Pugh should have been able to testify. But what's interesting about that argument, I find, is that plaintiff never moved to preclude Dr. Cusel, Mr. Cusel, from testifying. So plaintiff's argument is, in short, because I chose not to object to an expert, and that expert was allowed to testify. And in my opinion, that expert did a worse job than my expert would have done. My expert should have been allowed to testify. That's not a construct of the federal- I would dispute, though, that Dr. Pugh has a lot of experience. I mean, his CV is impressive, his articles are impressive. I mean, he looks on paper like someone that gets qualified as an expert. He has, but we've also, as pointed out in our appellee's brief, in about four or five times, has been not allowed as an expert in federal court. So I don't, impressive, I wouldn't necessarily agree with that. But as I understand it, he's been qualified as an expert in a particular area. Yes, he has, and he's also not been allowed to testify in that particular area. So it depends on his report and the quality of his report in a given case, which is why you get these disparate results at the district court level. And again, qualification is only one component of admissibility of expert testimony. With regard to summation, it's number one, not a preserved argument. It's well within the district court's discretion, but I do want to talk about what's really the meat and potatoes, in my opinion, of that argument. And that is this comment by defense counsel that plaintiff takes objection to now. That comment was factually correct. There was no expert that was ever intended to be called about the reasonableness of plaintiff's decision to cross in the manner in which he did. That was not what plaintiff's expert was going to testify to. Plaintiff's expert was going to testify about the visibility from the truck. So there was at no point a misrepresentation to the jury. There was no adverse witness inference given. It was merely an argument made by counsel and a permissible argument made by counsel. And finally, with regard to the photos and the videos, I'll take the video first. The jury was shown the moments of impact, and they heard testimony about what transpired after impact. It was well within the district court's discretion to say what happened after impact is not relevant to the issue of liability, which was all that was being tried at this phase of the trial. And with regard to the photographs that showed Dr. Pugh's vantage point from inside the cab, as the very articles Dr. Pugh's report was supposedly relied upon, it's not what Dr. Pugh saw in the cab. It's what Mr. Mishu should have seen in the cab. That factors things like his height, his seat adjustment, the angles from which the plaintiff was approaching the vehicle, etc., etc., etc. And all we have here are random photographs from inside the cab out, showing cones lined up around the vehicle, which no one can discern the significance of the placement of those cones, why they're there, what they mean. So unless the court has any other questions, I know I have plenty of time left, but I'm happy to rest on my brief. Thank you. Thank you, your honors. Mr. Isaac. Yes, so your honor, actually in response to one of your questions, something came to me that I think would illustrate why I think this is a legal error. And let me offer it to you for your consideration before you decide the case. Let's assume the plaintiff couldn't get a lawyer. Say no lawyer wanted to take his case, he was pro se. And he goes to the district judge and he says, listen, I want to be able to see from the cab what Mr. Misho could have seen. And the judge says, I'll let you do an inspection, he does an inspection. It's a rhetorical question, obviously. Could he testify as to what he saw? 100%. Dr. Pugh should not have been precluded from talking about that. Now, we can use any expert we want to talk about visibility, and we might have been properly precluded from offering scientific evidence dealing, for example, with ocular vision, retinal movement, field division. But we have the right to designate that expert, and he can testify both to facts and to opinions. That is just fair. With respect to his credentials, they are impeccable. Not only is he an engineer, but as you know from reading his CV, he's an expert in ergonomics. And he's actually a teacher in both medicine and engineering, so he can marry both to each other. What are we to make of the fact that apparently he didn't apply the methodologies that he endorses as the best ones? Your Honor, I would ask you to take a look at the two articles that Mr. Weinberg referenced. I will confess to you that the mathematical theorems in there are like Mandarin to me. I have no idea what they mean. But if you look, I think, at from 125 to 128, and you even look on the SASE article, you will see that visual views, visual inspections are not countermanded. What these articles say is that they could be enhanced with what they call CADs, Computer Augmented Diagrams. But there's nothing in there that says that an expert can't base a decision or a person can't base a decision on what they see in an inspection. And the issue, as Mr. Weinberg said, is not that I didn't object to the defense expert. I think the defense expert can testify to that. That was our position all along, so there would have been no reason for me to take a position that he couldn't testify because we think he could. And in a case like this, where the plaintiff, look, has serious issues, it's not a crosswalk accident, I understand that. But we had a theory of liability, and the theory of liability is a valid theory. Any kind of incumbrance of that just wasn't fair, and we would ask you to reverse on that basis. Thanks for listening to me. Thank you very much. We'll reserve decision in this matter.